IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CRIMINAL ACTION** |
| ) | |
| v. ) | No. 11-10037 |
| ) | |
| ARTURO VILLARREAL-DE SANTIAGO, ) | |
| ) | |
| Defendant. ) | |
| ———————————————————— ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion to suppress statements made on two different occasions. (Doc. 34). The government has responded (Doc. 37) and the court held an evidentiary hearing on November 28 and December 5, 2011. For the reasons stated herein, defendant's motion to suppress his statements is denied.

I.    **FACTS**[1]

Defendant came to the United States from Mexico in 1986. Defendant's primary language is Spanish. In 1988, defendant purchased a false social security number from a man in the streets of Chicago for the purpose of obtaining work. Defendant worked under that false social security number from 1988 until 2007 when he gained lawful permanent residence status and was assigned his own social security number.

In late 2010 or January 2011, defendant went with his 19-year-old impaired daughter to the social security office to inquire about

---

[1] The facts are taken from the testimony of Social Security employee Janell Blaufuss, Social Security Agency Office of Inspector General Agent Bruce McKimens, and defendant as well as exhibits received in evidence.

her receiving benefits.  Defendant learned from a friend that he could transfer earnings from the false social security number to his new social security number.  Defendant asked the social security employee if transferring earnings was something they could do and the employee responded "yes."

On or about January 21, 2011, during defendant's second visit to the social security office, he was interviewed by Social Security employee Janell Blaufuss regarding transferring his earnings.[2] Defendant did not request an interpreter and one was not provided.[3] Ms. Blaufuss testified that she had no difficulty communicating with defendant and at no time felt an interpreter was necessary. Defendant, on the other hand, testified that he cannot read English and understood maybe half of their verbal conversation.

Ms. Blaufuss asked several questions about defendant's employment history and looked through his earnings documents.  She explained to defendant that it was illegal for him to have been working under the false social security number and that she would have to refer his application to law enforcement.

During their interview, Ms. Blaufuss asked defendant questions and typed his answers which generated his statement.  She explained that she probably typed one or two paragraphs at a time and then reviewed them with defendant to make corrections.  She also testified that she typed in standard statements regarding the illegality of

_____

[2] Defendant was referred to Ms. Blaufuss by the former employee who handled the inquiry about his daughter receiving benefits.

[3] Ms. Blaufuss testified that the Social Security office has Spanish-speaking employees as well as a telephone interpreting system that is available for interviews.

defendant using a false social security card and the destruction of that card.    After Ms. Blaufuss finished typing and reviewing defendant's statement, she handed him a printed copy to read and also read it out loud to defendant.    Defendant then signed and dated the statement.

Ms. Blaufuss told defendant that she was going to do some research through the social security databases to see if she could locate some of his earnings that he did not have proof of.    In the meantime, defendant was to try and gather more documents showing proof of earnings.    Ms. Blaufuss planned to meet again with defendant after her search.

At some point after their first meeting, Ms. Blaufuss made an allegation about defendant's illegal activity to the Social Security Agency Office of Inspector General.    According to Ms. Blaufuss, this was her office's standard policy when an individual wanted to transfer earnings from a social security number that used to work illegally in the United States.    Ms. Blaufuss testified that she referred these allegations on a "regular basis."    (Blaufuss trans. at 31).

After Ms. Blaufuss made the allegation about defendant, she spoke with Special Agent Bruce McKimens from the Office of Inspector General.    Special Agent McKimens instructed Ms. Blaufuss to find out if defendant knew whether the false social security number belonged to someone else because it would change the nature of the crime. However, Ms. Blaufuss did not think much of defendant's situation because she does so "many of these and rarely are they pursued." (Blaufuss trans. at 50).

On February 2, defendant met with Ms. Blaufuss a second time

-3-

after she called on the telephone and scheduled the meeting. Both defendant and Ms. Blaufuss were able locate additional earnings documents. During this meeting, Ms. Blaufuss and defendant worked together on filling in the gaps in his employment history. Ms. Blaufuss also asked defendant if he knew whether the false social security number belonged to someone else to which he responded "no, I did not know."

Special Agent McKimens presented the referral from Ms. Blaufuss to Assistant United States Attorney Brent Anderson. Mr. Anderson indicated that he would prosecute defendant and Special Agent McKimens figured out a time to go and interview defendant.

On March 2, 2011, Special Agent McKimens, Kansas Department of Revenue Special Agent Miguel Arrellano, and Maggie Brown went to defendant's place of work to interview defendant. Special Agent Arrellano was invited by Special Agent McKimens because he is a native Spanish speaker. Ms. Brown was training with Special Agent Arrellano and accompanied him.

Special Agent McKimens testified that he asked defendant if he spoke English. Defendant responded "más o menos." From that point on, Agent McKimens asked the questions and Special Agent Arrellano interpreted.

The purpose of the interview was to review and confirm defendant's statements made to Ms. Blaufuss. Special Agent McKimens told defendant that he was not under arrest and that the interview was voluntary. However, defendant was not informed that he could have an attorney present.

Defendant inquired as to whether this was a state or federal

-4-

crime and what would happen to him.  Special Agent McKimens explained that there may be some state violations, but that he was focused on the federal violations.  He also explained that the government would be seeking criminal prosecution within the end of the month.  Then defendant would be brought before a judge and probably released on bond.

**II.  ANALYSIS**

Defendant moves to suppress his statements made to Ms. Blaufuss because he was not provided an interpreter during their meeting. Defendant argues that an interpreter was necessary under K.S.A. 75-4351 because he was being interviewed by a federal government employee in a federal government office about criminal activity.

K.S.A. 75-4351 provides:

A qualified interpreter shall be appointed in the following cases for persons whose primary language is one other than English ...: (a) In any grand jury proceeding, when such person is called as a witness;

(b) in any court proceeding involving such person and such proceeding may result in the confinement of such person or the imposition of a penal sanction against such person;

(c) in any civil proceeding, whether such person is the plaintiff, defendant or witness in such action;

(d) in any proceeding before a board, commission, agency, or licensing authority of the state or any of its political subdivisions, when such person is the principal party in interest;

(e) prior to any attempt to interrogate or take a statement from a person who is arrested for an alleged violation of a criminal law of the state or any city ordinance.

Sections (a)-(d) are not applicable to the facts of this case. And the court finds no violation of section (e) because defendant was not under arrest.

It is undisputed that defendant voluntarily went to the Social Security Office to help his daughter receive benefits.  While there may be some dispute regarding "who" initiated the discussion regarding transfer of earnings, which generated the contact with Ms. Blaufuss, defendant cannot quarrel with the fact that he wanted to transfer his earnings from his false social security number to his valid number and fully cooperated with Ms. Blaufuss during the process.  Defendant's cooperation continued even after Ms. Blaufuss told him that she would report his illegal activity to law enforcement.

Defendant testified that he felt like he had to talk with Ms. Blaufuss because she was a government official and he respects the United States government.  While this may be true, defendant was not under arrest or in a classic custodial setting where an individual would feel intimidated or unable to leave.  Defendant met with Ms. Blaufuss, a non-uniformed, unarmed, social security employee in an open room with no door.  A reasonable person in defendant's shoes would not have felt in custody.  See United States v. Jones, 523 F.3d 1235, 1240 (10th Cir. 2008) (stating inquiry into whether a person is free to leave is factually determined from reviewing the totality of the circumstances).  Therefore, defendant's meeting with Ms. Blaufuss was voluntary and no interpreter was required under K.S.A. 75-4351 or federal law.

To the extent that defendant's motion to suppress relates to statements he made to Special Agent McKimens, it is denied for essentially the same reasons.  Although the room where the statement was taken was more confining than the open Social Security office, defendant was not under arrest and an interpreter was present.  While

-6-

the presence of three law enforcement agents may have been somewhat intimidating, there is no evidence that defendant was coerced or threatened.  At the conclusion of the interview, he was free to leave. Defendant cites no case which holds or suggests that a statement given under these circumstances must be suppressed.

**III. CONCLUSION**

Defendant's motion to suppress his statements is denied. Defendant made his incriminating statements freely and voluntarily during a non-custodial interview.  Consequently, no interpreter was required by Kansas or federal law.

IT IS SO ORDERED.

Dated this   9th   day of December 2011, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE